UNITED STATES BANKRUPTCY COURT                    **NOT FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
-----------------------------------------------------------x

In re:                                            Chapter 7
                                                  Case No. 03-35669 (CGM)
        CHANDRE CORPORATION,

                                Debtor.

-----------------------------------------------------------x

MICHAEL O'LEARY, TRUSTEE FOR                      Adversary Proceeding
CHANDRE CORPORATION,                              No. 05-9009 (CGM)

                                Plaintiff,

        v.

INDOTRONIX INTERNATIONAL
CORPORATION, CHOCOVISION CORP.,
and BABU MANDAVA,

                                Defendants.
-----------------------------------------------------------x

**A P E A R A N C E S:**

Joel David Sharrow, Esq.
Moses & Singer, LLP
Attorneys for Indotronix International Corporation
The Chrysler Building
405 Lexington Avenue
12th Floor
New York, N.Y. 10174

John V. Fabiani, Esq.
Fabiani & Cohen, LLP
Attorneys for Michael O'Leary, Chapter 7 Trustee
570 Lexington Avenue
4thh Floor
New York, N.Y. 10022

1

## MEMORANDUM DECISION ON DEFENDANTS' MOTION TO DISMISS COMPLAINT IN LIEU OF ANSWERING

Cecelia G. Morris, United States Bankruptcy Judge:

In this Adversary Proceeding seeking recovery of assets allegedly fraudulent conveyed to Debtor's parent and sister subsidiary corporation, Defendants' Indotronix International Corporation ("Indotronix"), Chocovision Corp. ("Chocovision"), and Babu Mandava ("Mandava") (collectively, the "Defendants"), have filed a Motion to Dismiss Adversary Proceeding in Lieu of Answering, ECF Docket No. 6 (the "Dismissal Motion"). Plaintiff Michael O'Leary, Trustee for Chandré Corporation (the "Debtor") (collectively, the "Plaintiff"), has filed Opposition, to which Defendants have filed a reply. Upon the foregoing submissions, and in consideration of oral argument heard on August, 2, 2005, the Court rules as follows:

Counts I and V are dismissed, without leave to replead. With regard to Count I, the Chapter 7 Trustee (the "Trustee") does not have standing to bring an action on a judgment obtained by creditor Cardinal Holdings, Limited ("Cardinal"). As Plaintiff's claim to pierce the corporate veil is dependent upon the action seeking to enforce Cardinal's judgment, it does not survive dismissal of Count I.

Count V seeking recovery for civil conspiracy is also dismissed, because this claim was adjudicated on the merits pursuant to Hon. Loretta A. Preska's July 23, 2004 ruling (the "District Court ruling") dismissing the matter of *Cardinal Holdings, Ltd. v. Indotronix Int'l Corp., Chocovision Corp. & Babu Mandu*, No. 04 Civ. 1138 (S.D.N.Y.) (the "District Court Action"). The doctrine of collateral estoppel precludes Plaintiff from re-litigating this issue in the current action.

2

Count III is dismissed with leave to replead, as failing to meet the specificity requirements of FRBP 7009(b). Although Defendants have argued that the Court should deny Plaintiff's request to replead because of Plaintiff's access to pre-litigation discovery, Second Circuit authority indicates that it would be an abuse of discretion to dismiss this cause of action without giving leave to replead at least once.

The Court further holds that Counts II and IV are sufficiently plead to defeat the Motion to Dismiss. Any claim for damages over the value of the transferred assets, however, must be stricken from the Complaint, as no authority has been provided to the Court for the proposition that punitive or compensatory damages are available on a fraudulent conveyance claim. Plaintiff's recovery, if any, will be limited to the value of assets if the Court ultimately determines that assets were fraudulently conveyed to the Defendants.

## JURISDICTION

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. Proceedings to determine, avoid or recover fraudulent conveyances are "core proceedings" pursuant to 28 U.S.C. § 157(c)(2)(H).

## BACKGROUND FACTS

### The Adversary Proceeding Complaint [1]

The following facts are derived from Plaintiff's Adversary Proceeding Complaint (the "Complaint").[2] At some point in time not mentioned in the Complaint, Cardinal

---

[1] The Complaint's lengthy discussion of the procedural history of the English action is not discussed herein as it is unnecessary to the Court's holding.

contracted with Debtor to distribute chocolate-tempering machines and accessories

throughout the United Kingdom and Europe. Complaint, ¶ 2. Also according to the

Complaint, Debtor breached the distribution agreement and Cardinal sought, and

recovered, a $4,800,000.00 judgment against Debtor in England (the "English

Judgment"). Complaint, ¶ 3. The English Judgment was awarded on or around October

13, 2000. Thereafter, Cardinal initiated actions to collect on the English Judgments in the

New York State Supreme Court for Dutchess County. During the same time period,

Debtor, acting pursuant to the supervision and direction of Indotronix and Mandava,

transferred all or substantially all of its assets to a new entity, Chocovision. (Chocovision

was incorporated on or around October 20, 2000. Complaint, ¶ 38.). It is alleged upon

information and belief that no consideration was provided for the transfer of these assets,

which were carried out, according to Plaintiff, with the intention of avoiding collection

on the English Judgments. Complaint, ¶ 4. The Complaint also states that Debtor's

principal, Mandava, improperly dominated Debtor. Mandava, by and through Indotronix

or in his capacity as principal of either or both corporate entities, is alleged to have

undercapitalized Debtor, which in turn received all working capital from Indotronix;

selected all of Debtor's officers and directors; and commingled Debtor's assets and funds

with those of Indotronix and Chocovision. Other aspects of this domination alleged are

the existence of common members of the boards of directors shared between Debtor,

Indotronix and Chocovision, one of whom was Mandava; the disregard of corporate

formalities such as the filing of corporate reports and maintenance of minutes of

corporate meetings; the fact that the offices for all three corporations were located at the

---

[2] As this matter is before the Court on Defendants' Dismissal Motion, the Court must take all factual allegations made by Plaintiff as true and draw inferences in Plaintiff's favor. *See Bolt Electric, Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995).

same building (albeit at different street addresses); and finally, the allegation is made that Mandava made all significant decisions on behalf of Debtor. Complaint, ¶¶ 29-36.

The Complaint states, upon information and belief, that Debtor transferred all or substantially all of its assets to Chocovision on or around October 20, 2000. Complaint, ¶41. The Complaint further states that on or around April 12, 2001, the Debtor transferred all its cash, accounts, equipment, and general intangibles[3] to Indotronix, together with a security interest in the aforementioned assets, and that a UCC-1 financing statement was filed reflecting these transactions, ¶¶ 41 & 42. The Complaint states that the transfers were accomplished at the direction of Mandava, acting through Indotronix, Debtor's parent corporation. It is also alleged upon information and belief that neither Indotronix nor Chocovision provided Debtor with consideration for the transfer of these assets, and that the conveyances rendered Debtor insolvent, ¶¶ 44-45. Plaintiff also maintains that Chocovision operates the same type of business as Debtor, producing the same products as Debtor produced and employing the Debtor's former employees at the Debtor's former place of business. The Conveyances were allegedly discovered as a result of discovery taken within the context of Debtor's bankruptcy case, as set forth in more detail below.

**Prior Proceedings Before This Court**

Debtor filed this Chapter 7 bankruptcy case on March 20, 2003. Application was made by Cardinal to examine various of Debtor's former officers and employees, objection to which examination was resolved by consent order entered by this Court on July 18, 2003. Apparently, several 2004 examinations were held, subsequent to which an

---

[3] These included at least $150,000 in cash or cash equivalents, $77,068.33 in computer equipment, and $72,144.42 in molds and tools. Complaint, ¶ 41.

5

Application to Cancel 2004 Examination by Non-Party Witness was filed by counsel for

Indotronix, ECF Docket No. 14 in case number 03-35669, and upon consideration of the

parties' various arguments in favor of proceeding with the examinations and those

advocating cancellation of same, the Court determined that further examinations could

serve no further purpose in the Debtor's no asset Chapter 7 case. The Court was

particularly persuaded by Debtor's counsel's argument that continued 2004 Examinations

would in fact be disguised discovery of matters at issue in the District Court Action.

Therefore, the Court entered an order on April 2, 2004 suspending all further Rule 2004

examinations until further court order upon proper application.

### Judge Preska's Ruling in the District Court Action

Meanwhile, the District Court Action continued against Defendants. On July 23,

2004, Judge Preska issued an oral ruling on Defendants' Motion to dismiss the District

Court Complaint. Judge Preska ruled that Plaintiff Cardinal was not the proper party to

bring fraudulent conveyance and corporate veil piercing claims against the Defendants in

that action. Rather, Judge Preska held that "only the trustee, not the plaintiff, has

standing in this matter." Transcript of District Court Ruling, p. 5, l. 23-24. The District

Court Action was dismissed without prejudice to the Trustee's rights to pursue the

fraudulent conveyance claims, or Cardinal's ability to bring the claims if the Trustee

abandoned the fraudulent conveyance claims.

### The Adversary Proceeding

On December 14, 2004, a Status Conference was conducted in Debtor's Chapter 7

case. Counsel for Cardinal, impatient with the bankruptcy case's progress, indicated at

that time that information regarding the fraudulent conveyances had been provided to the

6

Chapter 7 Trustee on August 12, 2004, but the Trustee had yet to take action. The

Trustee indicated that it was engaged in settlement discussions with Defendants and had

not decided whether to proceed with a fraudulent conveyance claim. Apparently, this

settlement never reached fruition, because on March 21, 2005, the Trustee filed an

application to employ Mr. Fabiani, who also represents Cardinal, as special counsel for

the Trustee. The Court granted the Trustee's Application on April 11, 2005. The instant

adversary proceeding was filed on March 23, 2005.

## SUMMARY OF THE PARTIES' ARGUMENTS

The Dismissal Motion argues that the Trustee cannot maintain the First Cause of

Action to enforce Cardinal's judgment, as it is a cause of action that belongs to the

creditor Cardinal, and the Trustee has standing to pursue claims on behalf of the Debtor

only. The veil piercing action that is joined with the action to collect on Cardinal's

judgment therefore cannot be maintained as a matter of law because a veil-piercing claim

is not an independent cause of action. The Defendants also argue that the first count is

internally inconsistent because it contains admissions (which Defendants allege are

binding on the Trustee) that Debtor observed corporate formalities and maintained a

separate existence, and alleged two alternative theories for veil piercing within the same

count, which is prohibited, Defendants maintain, pursuant to Fed. R. Civ. P. 8, made

applicable to this adversary proceeding pursuant to Fed. R. Bankr. P. 7008.

Defendants also claim that the Second through Fourth Counts, which assert

fraudulent conveyance claims against the Defendants, do not allege sufficient facts.

Additionally, these causes of action are stated to contain internally inconsistent

allegations in that two transferees are specified – Indotronix and Chocovision – without

any allegation of an interim transfer between these two entities. Furthermore, although these counts seek relief against Mandava, there is no allegation made that he received any of the transfers. The Complaint also alleges that these unspecified conveyances harmed Debtor by preventing **Cardinal** from collecting from the Debtor amounts awarded in the English Proceeding, an illogical allegation at best -- how could Cardinal's failure to collect from Debtor have caused harm to Debtor?

Defendants further contend that the Second through Fourth Counts seek damages to which the estate is not entitled, i.e. a judgment against all defendants, regardless of whether or not they are transferees of the assets, for the full amount of the English Judgment. The Fifth count, for civil conspiracy, must be dismissed because, *inter alia*, there is no tort of civil conspiracy in New York; the corporate Defendants are alleged to have been under the control of the individual Defendant at all times and thus, the individual is the sole true actor and an individual cannot conspire with himself; and the Fifth count is based upon the same background of conclusory and speculative allegations as the First through Fourth counts and for these reasons, must fail. The Complaint's wherefore clause seeks recovery of $5,000,000 in compensatory damages and $15,000,000 in punitive damages on the non-actionable civil conspiracy claim.

The Dismissal motion also points out that Trustee's counsel apparently took the complaint filed in the District Court action, replaced a few references to "Cardinal" with "Chandré" and refiled the very same complaint here in Bankruptcy Court as an Adversary Proceeding. A comparison of the two complaints reveals that this does appear to be the case. This style of pleading is artless to say the least; it is also apparent that the Trustee's counsel failed to change some of the references from Cardinal to Chandré

where appropriate. This oversight has given the Defendants' counsel much fodder in the Motion to Dismiss.

The Trustee/Plaintiff has filed Opposition to the Motion to Dismiss (the "Opposition"): The Trustee argues that the First Count is intended to enforce the English Awards against the Defendants for the benefit of the Chandré estate. The veil piercing cause of action is joined with the action to enforce the English Judgment and not brought as an independent cause of action. The Trustee also contends that the first count is within the parameters of Fed. R. Civ. P. 8(e)(2), made applicable to this bankruptcy proceeding through Fed. R. Bankr. P. 7008(e)(2), which states that "A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one court or in separate counts..." It is Plaintiff's position that the fact that the First Count asserts both alter ego and instrumentality theories does not render it defective, because it an alternative argument.

The Plaintiff argues that the Second, Third and Fourth Counts state causes of action, and that Plaintiff has plead in the alternative for either compensatory damages or the setting aside of the contested conveyances.

The Plaintiff also maintains that the Fourth Count complies with the specificity requirements of Rule 7009(b), in that it includes allegations that Defendants effectuated the transfer of Chandré's assets with the specific and actual intent to hinder, delay and defraud Cardinal from collection on the English Judgment. Such specific allegations identify the Defendants' definite intent to defraud its creditors. The Plaintiff further states that adequate allegations that preview the "badges of fraud" were set forth in the

9

complaint, defeating Defendants' allegations that such were not contained in the complaint.

The Plaintiff argues that the complaint articulates a cause of action for Civil Conspiracy, because New York Courts recognize a cause of action for civil conspiracy where there are underlying torts that have been adequately plead. It is Plaintiff's position that Counts One through Four in the Complaint adequately plead such an underlying tort.

Defendants' have filed a Reply Memorandum to the Opposition (the "Reply"), which is most notable for the extensive citations to this Court's recent memorandum opinion, *Devon v. Adelphia*, 322 B.R. 509 (Bankr. S.D.N.Y. 2005). Defendants correctly point out that this Court held in that case that a veil piercing action cannot be brought independently, but is merely a vehicle to hold a corporation's shareholders (in this case, Indotronix) liable for the debts of the corporation. *See id.* at 521.

## DISCUSSION

### Legal Standard on Motion to Dismiss

In considering the Defendants' Motion to Dismiss, the Court must accept all factual allegations made by the Plaintiff in the Complaint as true; *see Cohen v. Koenig*, 25 F.3d 1168, 1172-73 (2d Cir. 1994), however, "this is not to say…that every statement in a complaint must be accepted as true. The allegations must be well pleaded and thus the court need not accept sweeping and unwarranted averments of fact…In addition, courts are free to disregard legal conclusions, deductions or opinions couched as factual allegations." *See Leslie Fay Co., Inc. v. Corporate Property Assoc. 3*, 166 B.R. 802, 807 (Bankr. S.D.N.Y. 1994)(citations omitted). Nor should the court dismiss the complaint merely because the

10

allegations made fail to support the legal theory advanced; rather, the court must undertake an independent inquiry into the complaint to determine if relief is warranted under any possible legal theory. *See In re Rosen,* 151 B.R. 648, 652 (Bankr. E.D.N.Y. 1993).

### Count I – Action on Judgment:

**Trustee's Standing to Bring an Action on Judgment Obtained by Creditor Cardinal:**

Plaintiff's first count in the Complaint is styled as an "Action on Judgment." The judgment that Count One is predicated upon is the English Judgment obtained by Cardinal, a creditor of Debtor's estate. The Plaintiff in this action is the Chapter 7 Trustee, whose standing to bring suit derives from the Debtor. Whether a claim is general and may be brought by the Trustee, or particular, such that it belongs to an individual creditor, is a question of state law. *See Solow v. Stone*, 994 F.Supp. 173, 178 (S.D.N.Y. 1998). The Court must therefore look to New York Civil Practice Law and Rules Section 5014. The rationale for bringing an Action on Judgment pursuant to C.P.L.R. § 5014 is to convert a foreign judgment to an executable New York judgment. See New York C.P.L.R § 5014, Practice Commentary, C5014:1. Obviously, Cardinal initially sought to convert its English Judgment pursuant to C.P.L.R. § 5014, but was stayed from so doing by the bankruptcy filing. In the Complaint, Plaintiff states that Cardinal was in the process of initiating actions in New York Supreme Court for Dutchess County to collect on their English Judgment. Apparently, this state court proceeding was an Action on the English Judgment seeking its conversion to cognizable state judgment that could be enforced against Debtor's assets.

"Generally, an action on a judgment must be prosecuted by the real or beneficial owner thereof, who, in the absence of some transfer of interest, is the person in whose favor it runs." 10 Carmody-Wait, New York Practice § 67:12 (2d ed. 2005). The English Judgments do not run in favor of the Debtor; quite the opposite, they run against the Debtor. Chapter 7 Trustee standing is derived from the Debtor and if Debtor does not have standing to pursue a cause of action, neither does the Chapter 7 Trustee. "As a general matter, a trustee stands in the shoes of the debtor and has standing to bring any action that the debtor could have instituted prepetition. State law determines whether the claim asserted belongs to the debtor or to individual creditors. A trustee does not have standing to pursue claims on behalf of the debtor estate's creditors, but rather may only assert claims belonging to the debtor itself." *See Giddens v. D.H. Blair & Co., Inc. (In re A.R. Baron & Co., Inc.)*, 280 B.R. 794, 799-800 (Bankr. S.D.N.Y. 2002). The English Judgment is in favor of Cardinal *against the Debtor*. It appears that Plaintiff, spurred by creditor Cardinal pursuing its parochial interest in the English Judgment, is seeking to collect the Judgment *from itself* by piercing the corporate veil and reaching the assets of its shareholders. This is the only fair construction of the complaint, which states in pertinent part "Defendants exercised this domination to commit a wrong against **Cardinal**, specifically, Defendants organized, capitalized and operated Chandré in such a way as to hinder or prevent **Cardinal** from collecting the English Awards." *See* Complaint, ¶ 49. Somewhat inconsistently, Count One also alleges that "Chandré has been damaged as a direct and proximate result of Defendants' refusal to satisfy the English Awards and judgment should enter against Defendants for the amount of the English Awards…" Complaint at ¶ 52. The Trustee does not have standing to seek to

enforce this creditor's particularized judgment held against the Debtor; nor it is clear how the failure to pay a judgment owed by Debtor is somehow damaging to the Debtor, particularly since it is Cardinal who is alleged to have been injured in the Complaint by the failure to pay the English Judgments.

A question has been raised as to the Trustee's ability to bring the fraudulent conveyance claims in conjunction with creditor Cardinal, which is the largest creditor of the debtor. 11 U.S.C. § 548(a)(1) provides that only the trustee may avoid a fraudulent transfer. In some limited instances, however, bankruptcy courts have permitted creditors' committees, and even more rarely individual creditors, the right to pursue fraudulent conveyances actions on behalf of the bankruptcy estate. *See In re Metro Elec. Mfg Co.*, 295 B.R. 7, 12 (Bankr. E.D.N.Y. 2003)(Eisenberg, J.) ("Because [the] grant of authority to bring avoidance actions under the various sections of the Bankruptcy Code is specific to the trustee...cases entertaining a request for a 'transfer' of such right are rare, and rarely granted...Bankruptcy courts are properly hesitant to authorize the sale or assignment of a trustee's avoidance powers or causes of action to a single creditor."). The concept of derivative standing was conceived in the Chapter 11 context, but has been applied in the Chapter 7 context in extraordinary circumstances. *See, e.g. In re Vogel Van & Storage, Inc.*, 210 B.R. 27 (N.D.N.Y. 1997)(derivative standing allowed where trustee did not object, the creditor would pay all legal fees associated with the action and the recovery would benefit the entire estate). Ideally, the Chapter 7 Trustee would be a co-plaintiff in the lawsuit to ensure that all creditors benefit from the recovery in accordance with his "fiduciary capacity vis-à-vis the creditors of the debtor's estate." *See In re Metro Elec. Mfg Co., supra*, at 12; *see also In re Housecraft Industries, USA, Inc. v.*

13

*Murad*, 310 F.3d 64, 71 (2d Cir. 2002) ("The Trustee's participation as a party is also

significant because...[the creditor] is not replacing the Trustee as a claimant; it is simply

assisting him with the litigation."). Consent should not be construed as mere failure to

object; the Trustee must actively believe that a fraudulent conveyance exists but be

powerless to pursue it for reasons beyond his control, i.e. insufficient funds in the estate

to pursue such a claim. *Id.* at 13. Here, it is clear that whatever is recovered from the

Defendants will benefit the entire bankruptcy estate and that the Trustee does not object,

indeed, has brought the cause of action against Defendants, albeit having hired as special

counsel the same attorney who represents Cardinal. Thus, it does not defeat this action

that the Trustee brings this action perhaps in conjunction with Cardinal, so long as the

Trustee "check[s] any potential for abuse by the parties..."

**Availability of Veil Piercing:**

Because the Trustee does not have standing to bring the action on Cardinal's

judgment, the veil piercing allegations cannot survive, because veil piercing is not an

independent cause of action, but rather a vehicle for holding a shareholder or a parent

corporation liable for the debts of the corporate defendant. "An attempt to pierce the

corporate veil is an assertion of facts and circumstances that will persuade the court to

impose the corporate obligations on its owners, and is not a cause of action independent

of that against the corporate general partner." *See Morris v. New York State Dep't of*

*Taxation and Fin.*, 82 N.Y.2d 135, 141 (1993). The Court agrees with Defendants that a

veil piercing action should have been sought in conjunction with the underlying English

proceedings through which the English Judgment was obtained. As the court finds that

the Trustee does not have standing to bring the Action on Judgment on behalf of

Cardinal, and therefore, the veil piercing cause of action must fail, it does not reach the

issue of whether Count One is internally inconsistent, or whether the Trustee judicially

admitted that Chandré had an independent corporate existence, or the sufficiency of the

factual allegations contained in the first count.

## Count II – Violation of New York Debtor and Creditor Law Section 273-a

Count Two is brought pursuant New York Debtor and Creditor Law § 273-a.

> Section 273-a of the New York Debtor and Creditor Law provides:
> Every conveyance made without fair consideration when the person
> making it is a defendant in an action for money damages or a judgment in
> such an action has been docketed against him, is fraudulent as to the
> plaintiff in that action without regard to the actual intent of the defendant
> if, after final judgment for the plaintiff, the defendant fails to satisfy the
> judgment.
> The purpose of 273-a is to provide a remedy for a creditor who has
> brought an action for money damages against a party who, after being
> named a defendant in that action, conveys assets to a third party for less
> than fair consideration leaving the ultimate judgment unpaid. To prevail
> on a § 273-a fraudulent conveyance claim, plaintiff must establish three
> elements: (1) the conveyance was made without fair consideration; (2) at
> the time of transfer, the transferor was a defendant in an action for money
> damages or a judgment in such action had been docketed against him; and
> (3) a final judgment has been rendered against the transferor that remains
> unsatisfied.

See *Neshewat v. Salem*, 365 F.Supp.2d 508, 518-19 (S.D.N.Y. 2005).

The Complaint alleges, upon information and belief as ascertained from the pre-

litigation bankruptcy discovery, that the conveyance was made without fair consideration,

see ¶ 44, so the first element of the standard is met by the complaint. The second

element of § 273-a that must be met is that transferor must have been a defendant in an

action for money damages or a judgment is such action had been docketed against the

defendant at the time of the transfers. The Complaint alleges that the transfers took

place, again, upon information and belief as ascertained from the pre-litigation

bankruptcy discovery, in October, 2000 and April, 2001, ¶ 42. The English Action was filed in April, 2000, ¶ 18. Thus at the time of the transfers, the Debtor was a defendant or judgment debtor in the English Action, and the second element is met.

The third element states that final judgment must be rendered and remain unsatisfied. The English proceeding went to final judgment on February 15, 2001, and ¶ 28 of the Complaint states in pertinent part that "No portion of English Awards has been collected."

Thus, all three elements have been sufficiently alleged, either through specific facts or facts upon information and belief, for which the source of the belief is set forth in the Complaint at ¶ 46.

## Count III- Violation of New York Debtor and Creditor Law Section 273

Count Three is brought pursuant to New York Debtor & Creditor Law § 273. "[T]o prevail on a § 273 constructive fraud claim, a plaintiff need not prove intent to defraud but instead must show (1) a conveyance, (2) without fair consideration, (3) by a person who is insolvent or who becomes insolvent as a consequence of the transfer…A person is considered insolvent under the Debtor and Creditor Law when: 'the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.' N.Y. Debt. & Cred. Law § 271." *See Lippe v. Bairnco Corp.*, 249 F.Supp.2d 357, 376 (S.D.N.Y. 2003). The Plaintiff alleges that the transfers rendered Debtor insolvent, upon information and belief, at ¶ 45 of the Complaint. It is also alleged, again, upon information and belief, that the transfers were made without consideration.

"The particularity requirements of Rule 9(b) apply to claims asserted under Sections 273 and 276 of the Debtor and Creditor Law." *Cargo Partners v. Albatrans, Inc.*, 207 F.Supp.2d 86, 115-6 (S.D.N.Y. 2002). "Rule 9(b) provides: 'In all averments of fraud…the circumstances constituting the fraud…shall be stated with particularity.' In general, allegations of fraud based on information and belief do not satisfy the requirements of Rule 9(b). There is an exception as to matters peculiarly within the knowledge of the opposing party. As to such matters, allegations may be made on information and belief, but the allegations must be accompanied by a statement of the facts on which the belief is founded. While a plaintiff need not demonstrate in his complaint that what he believes to be true is in fact true, he must present facts that show that his belief is not without foundation, that it is belief rather than irresponsible speculation." *Id.* (citations omitted).

> "In a bankruptcy case where the trustee or a third party outsider to the fraudulent transaction is pleading the fraud on secondhand knowledge for the benefit of the estate and all of its creditors, greater liberality is generally afforded in the pleading of fraud than in a civil suit. Courts have thus held that the complaint must set forth the facts with sufficient particularity to apprise the defendant fairly of the charges made against him so that the defendant can prepare an adequate answer to the allegations. A strict interpretation of Rule 9(b) in circumstances where the details of the scheme are peculiarly within the knowledge of the defendants would be inappropriate. Pleading on information and belief is usually inadequate to meet the particularity requirement. But a fraud pleading that concerns matters peculiarly within the adverse party's knowledge, will satisfy the 9(b) requirements if accompanied by a statement of facts upon which the belief is founded."

*In re Ahead by a Length*, 100 B.R. 157, 166-7 (Bankr. S.D.N.Y. 1989)(citations omitted) (emphasis supplied).

The Plaintiff includes a detailed recitation of procedural history of the English

Actions and states in a general manner that the pre-litigation discovery uncovered the

fraudulent conveyances. Virtually every factual allegation contained in the section of the

Complaint entitled "Fraudulent Conveyances" is made upon information and belief,

however, and no specific facts actually uncovered in the pre-litigation discovery are set

forth in the Complaint upon which the purported belief is founded. Thus the third cause

of action must be dismissed, as factually inadequate.

### Count IV – Violation of New York Debtor and Creditor Law Section 276

Count Four allegedly also fails to meet the specificity requirement of Fed. R.

Bankr. P. 7009. Claim Four is brought pursuant to New York Debtor & Creditor Law §

276.

"Plaintiffs' actual fraud claims are brought pursuant to § 276 of the New York

Debtor and Creditor Law, which provides: 'Every conveyance made and every obligation

incurred with actual intent, as distinguished from intent presumed in law, to hinder,

delay, or defraud either present or future creditors, is fraudulent as to both present and

future creditors.' Hence, to prevail on a § 276 claim, a plaintiff must prove that a

defendant acted with actual intent to hinder, delay, or defraud creditors..." *See Bairnco,*

*supra,* at 374. "Because fraudulent intent is rarely susceptible to direct proof, plaintiffs

often seek to prove intent to defraud circumstantially by proof of certain 'objective

facts'—'badges of fraud'--that give rise to an inference of intent to defraud. Among

these 'badges' are: 1) gross inadequacy of consideration; 2) a close relationship between

transferor and transferee; 3) the transferor's insolvency as a result of the conveyance; 4)

a questionable transfer not in the ordinary course of business; 5) secrecy in the transfer;

and 6) retention of control of the property by the transferor after the conveyance..." *Id.*

18

The Court thinks the Complaint alleges the existence of at least two of the badges of fraud with sufficient specificity – a close relationship between transferor and transferee (two subsidiaries with the same parent corporation), and a questionable transfer not in the ordinary course of business – i.e. it was not in the ordinary course of Debtor's business to transfer all or substantially all of its assets to a sister corporation at a time when the Debtor was the defendant in a multi-million dollar law suit. There is also the allegation that Chocovision was created for the sole purpose of receiving Debtor's assets and preventing collection on the English Judgments. *See In re Kaiser*, 722 F.2d 1574, 1583 (2d Cir. 1983) (creation of dummy corporations to hide assets indicative of an intent to hinder, delay or defraud creditors). These factual allegations meet the specificity criteria of Rule 7009. It is adequately alleged that the Debtor's assets were transferred to a newly created corporation for the express purpose of shielding the assets from collection, i.e. with the actual intent to hinder and delay its creditor, Cardinal, from collecting on the English Judgments. Thus the Fourth Count must stand.

### Count V – The Civil Conspiracy Claim is Barred by Collateral Estoppel.

Although Plaintiff maintains that an adequate foundation is laid for the continuation of the civil conspiracy claim, this Court thinks that Judge Preska's dismissal of the civil conspiracy claim was on the merits, and therefore collateral estoppel precludes its re-litigation in this Court.

"For collateral estoppel to apply, the court must find that (1) the issues in both proceedings are identical;  (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding,

and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." See Misha v. Ageloff, 299 F.Supp.2d 249, 253 (S.D.N.Y. 2004).

> In the District Court Action, Judge Preska held as follows:

> "…now turning to plaintiff's fifth claim, which alleges that the defendants engaged in a civil conspiracy to prevent the plaintiff from collecting on the two British judgments. The New York courts have long held that no independent claims for conspiring to commit a civil tort exists…Accordingly, the fifth claim is also dismissed."

Transcript of District Court Action, p. 6-7.

The Court finds that all of the above factors are met with respect to the Fifth Cause of action -- Judge Preska dismissed the civil conspiracy claim, as Defendants' so aptly described it -- "in reality, on its merits." See Affidavit in Support of Motion to Dismiss Complaint, at ¶ 11. As noted *supra*, the complaint filed in this Adversary Proceeding is virtually identical to that filed in the District Court Action.

**Damages Available on Fraudulent Conveyance Claim**:

Plaintiff can't recover more than the value of the property fraudulently conveyed under New York Debtor and Creditor law, and thus any claim for punitive, compensatory or other damages, except to the extent of return of the assets, or if the assets no longer exist, the value of the assets transferred, must be dismissed.

> "Generally, the creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance. Section 278 of New York's Debtor and Creditor Law allows creditors, such as plaintiff, who have established that a conveyance is fraudulent and have a mature claim against the debtor, to seek an order from the Court to set aside the conveyance 'to the extent necessary to satisfy his claim' or to '[d]isregard the conveyance and attach or levy execution upon the property conveyed.' N.Y. Debt. & Cred. Law § 278. The purpose of the remedy fashioned by DCL § 278 is to grant the creditor the right 'to be paid out of assets to which he is actually entitled and to set aside the indicia of ownership which apparently contradict that right. However, where the assets

20

> fraudulently transferred no longer exist or are no longer in possession of
> the transferee, a money judgment may be entered in an amount up to the
> value of the fraudulently transferred assets. Under New York law, a
> creditor may recover money damages against parties who participate in the
> fraudulent transfer and are either transferees of the assets or beneficiaries
> of the conveyance."

*See Neshewat, supra,* at 521-2. *See also Roselink Investors, L.L.C. v. Shenkman,*
2004 WL 875262 (S.D.N.Y. May 19, 2004) (A creditor's remedy in a fraudulent
conveyance action is limited to reaching the property which would have been
available to satisfy the judgment had there been no conveyance.).

## Leave to Replead

Defendants' argue that the "extensive" document discovery taken in conjunction

with the § 341 meeting (8 boxes of documents were provided) and the 2004 examination

conducted of Jeffrey Carano, Debtor's former Financial Administrator, should have

yielded sufficient facts to support the allegations in the Complaint and as they clearly

don't – according to Defendants, anyway – the Complaint should be dismissed without

leave to replead. Under Second Circuit authority, it would be an abuse of this Court's

discretion to deny the Plaintiff's leave to replead their fraud claims after dismissing the

first filed complaint.

> "While we have found it an abuse of discretion to dismiss
> allegations of fraud without granting a party leave to file an initial
> amendment of its complaint to comply with Rule 9(b) of the Federal Rules
> of Civil Procedure, *see Devaney,* 813 F.2d at 569; *Luce,* 802 F.2d at 56-
> 57, we have also upheld decisions to dismiss a complaint without leave to
> replead when a party has been given ample prior opportunity to allege a
> claim, *see Armstrong,* 699 F.2d at 93-94 ("Because the complaint whose
> allegations were being considered by the district court was plaintiffs'
> second amended complaint, the district court did not abuse its discretion in
> refusing to give plaintiffs a fourth attempt to plead."); *see also Luce,* 802
> F.2d at 56 ("In cases where such leave has not been granted, plaintiffs
> have usually already had one opportunity to plead fraud with greater
> specificity....")."

*DeJesus v. Sears, Roebuck & Co., Inc.,* 87 F3d 65, 71 (2d Cir. 1996).

21

In the *DeJesus* case, the Plaintiffs had been given 4 previous opportunities to replead, before leave to replead was denied. Thus, Plaintiff is given leave to replead Count III.

## CONCLUSION

Defendants are to submit an Order consistent with this Opinion.

Dated: Poughkeepsie, New York
      October 28, 2005
                                   /s/ CECELIA G. MORRIS
                                   Cecelia G. Morris, U.S.B.J.